PETER W. ALFERT, SBN 83139
HINTON ALFERT & KAHN LLP
200 Pringle Ave., Suite 450
Walnut Creek, California  94596
Telephone: (925) 279-3009
Facsimile:  (925) 279-3342

TODD BOLEY, SBN 68119
ZOYA YARNYKH, SBN 258062
2381 Mariner Square, Suite 280
Alameda, CA  94501
Telephone: (510) 836-4500
Facsimile: (510) 649-5170

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATALIE BURKE and M.B., a minor by and through her guardian ad litem NATALIE BURKE , | No. |
| | **COMPLAINT FOR DAMAGES** |
| Plaintiffs, | [JURY DEMANDED] |
| v. | |
| BRENTWOOD UNION SCHOOL DISTRICT, MATTHEW DAILEY, KELLY MANKE, JENNIFER WHITNEY, DANA EATON and DOES 1-30, | |
| Defendants. | |

Plaintiffs NATALIE BURKE and M.B., a minor by and through her guardian ad litem

NATALIE BURKE allege as follows:

**JURISDICTION AND VENUE**

1.   Jurisdiction of Plaintiffs' federal law claims is founded upon 28 USC 1331 (federal

question jurisdiction), 28 USC 1343(a)(3) (federal civil rights jurisdiction), 42 USC 1983, and 20

USC 1681 *et seq.* (Title IX, Education Amendments of 1972).

2.   Defendant BRENTWOOD UNION SCHOOL DISTRICT has waived its 11th Amendment

immunity with respect to Plaintiffs' state law claims.

3.   Plaintiffs have complied with the California Government Tort Claims Act, Cal. Govt. Code

§ 810 *et seq.*

## INTRADISTRICT ASSIGNMENT

4.   This case arose in Contra Costa County, California, and pursuant to Rule 3-3 (c) of the Local Rules of the Northern District of California, should be assigned to either the San Francisco or Oakland Division of the Northern District Court.

### PARTIES

5.   Plaintiff NATALIE BURKE is a resident of the City of Discovery Bay, County of Contra Costa, California. She brings this action on her own behalf and as guardian ad litem for her daughter, M.B.

6.   M.B. is a minor and a resident of the City of Discovery Bay, County of Contra Costa, California.

7.   Defendant Brentwood Union School District ("BUSD") is a public entity duly incorporated and operating under California law as a school district.

8.   Defendant MATTHEW DAILEY ("DAILEY") was a vice principal of Adams Middle School (hereinafter "AMS") during the relevant time period. All actions alleged herein by DAILEY were taken under color of state law and in the course of his employment with the BUSD.

9.   Defendant KELLY MANKE ("MANKE") was the principal of AMS during the relevant time period. All actions alleged herein by MANKE were taken under color of state law and in the course of her employment with the BUSD.

10. Defendant JENNIFER WHITNEY ("WHITNEY") was a vice principal of AMS during the relevant time period. All actions alleged herein by WHITNEY were taken under color of state law in the course of her employment with the BUSD.

11. Defendant DANA EATON ("EATON") was and is the superintendent of BUSD. All actions alleged herein by EATON were taken under color of state law and in the course of his employment with the BUSD.

12. Defendant MARGARET KRUSE ("KRUSE") was and is the assistant superintendent of BUSD. All actions alleged herein by KRUSE were taken under color of state law and in the course of her employment with the BUSD.

13. Plaintiffs are unaware of the true names and capacities of the defendants sued herein as

DOES 1-30. Plaintiffs pray for leave to amend once their identities are discovered.

**FACTS**

14. M.B. was born on December 4, 2000. NATALIE BURKE is her mother.

15. M.B. was a student at Adams Middle School, BUSD during the 2013-2014 school year.

16. Beginning in the early Fall of 2013, M.B. began receiving text messages on her phone from another student, J.L., pressuring her to send him naked pictures of herself.  M.B. refused, and J.L. threatened that he would spread rumors about her if she did not send the pictures.

17. In approximately October, 2013, after J.L. bombarding M.B. with multiple text messages and threats, M.B. relented and sent him a naked picture of herself.

18. Around the same time as M.B. sent the picture to J.L., her iPod was stolen by another student, who then allegedly gave it to J.L. J.L. then demanded that M.B. meet him in the girls' bathroom, and threatened that if she refused, he would post the photograph she had sent him on the Internet. Another girl told M.B. that if she met J.L. at the girls' bathroom, she would get her iPod back.

19. M.B. went to meet J.L. at the girls' bathroom at a time designated by him due to fear of him posting her picture on the Internet. In the girls' bathroom, J.L. demanded oral sex from M.B. and due to fear of having her picture posted on the Internet if she refused, M.B. complied with J.L.'s demand.

20. Between January 2014 and early March, 2014, M.B. was harassed and bullied via text messages from J.L. and subsequently she was coerced into performing oral sex on him in the girls' bathrooms on campus on other occasions. In addition to threatening to post M.B.'s naked picture on the Internet, J.L. also threatened to spread rumors about M.B. if she did not do what he demanded of  her (i.e. send him a naked picture and later, perform oral sex on him).

21. Beginning in January of 2014, the time when the sexual assaults began, M.B. started missing school increasingly and her grades slipped significantly.

22. M.B. transferred to another school in BUSD on April 1, 2014, however due to the extensive trauma she experienced while at AMS it was necessary for her to enroll in independent home study.

23. In January of 2014 a picture was posted on Instagram (a social media site) by a female student claiming that another female student performed oral sex on a  male student, with a caption that this girl "suck a boy's [redacted]."  Once the student who posted the image had removed it from Instagram, she sent a mass text message to students at AMS which read, "ATTENTION all people at Adams: [redacted] sucked [redacted], behind the skoo [sic] today and he made out with her after".

24. During all relevant times, Defendant BUSD was aware that there was pervasive sexual harassment occurring at AMS, specifically inside the bathrooms. Public records document numerous instances of either suspected or actual incidents of sexual harassment and suspicious bathroom activities between March of 2010 and May, 2014.

25. Defendants DAILEY, MANKE, WHITNEY, EATON and KRUSE ("INDIVIDUAL DEFENDANTS), were aware of the extremely troubling situation in the bathrooms, and public records show a suggestion was made on or about October 15, 2013 that bathrooms should be monitored due to sexual and other illegal activities occurring in the bathrooms. However, rather than monitoring the premises, some bathrooms were simply permanently closed. The sexual activities and other dangerous conduct continued in the bathrooms that remained open.

26. The sexual harassment, sexting and sexual assaults were so widespread and apparent that, in addition to various first-account reports from students regarding bullying, cyber-bullying and harassment, the "sexting" issue and forced sex became public knowledge on or around March 10, 2014, when Brentwood Police Department discovered a "sexting ring" in several BUSD middle schools.

27. A parent sent an email to BUSD on March 14, 2014, apparently in response to the Brentwood Police investigation of the events at Adams, stating that it has been common knowledge among students at Adams [Middle School] of the dangerous and inappropriate activities occurring in the Adams restrooms, including smoking marijuana, engaging in sexual acts, and students taking pictures of themselves and sending them to other students. This has been going on for months, and INDIVIDUAL DEFENDANTS were on notice since at least October of 2013, when monitoring the bathrooms was suggested.

28. Some of the specific instances of which all defendants were aware include the following: on February 28, 2014, an incident report stated that a boy was going to have sex with a girl in the bathroom; on February 3, 2014, a student told her friend that another student was texting her and asking for "stuff", and that they both were going to go to the bathroom to tell him it was not ok; instances of teachers suspecting and reporting to the principal that students were meeting in the bathrooms, "XXX-ing" in the bathrooms, being in the bathroom for a long time, going to the bathroom without permission, and that they (the teachers) were "paranoid" about allowing students to go to the bathroom.

29. As a result of BUSD's failure to provide a safe educational environment for M.B., she has suffered severe emotional distress which has required psychological care.

30. As a further result of BUSD's failure to inform M.B.'s parents of the harassment of their daughter, they suffered severe emotional distress in that they lost trust in school officials and could not attend to M.B. immediately to provide her with appropriate parental and psychological support.

31. J.L. has pled guilty to forcible sex act on M.B. which carries a sentence of up to 10 years. J.L. also pled guilty to lewd acts on another female student, which carries a 2 year sentence.

## FIRST CLAIM FOR RELIEF

### (Violation of Title IX Against District)

32. Plaintiffs refer to, and incorporate by reference, paragraphs 1 through 29 as though fully stated herein.

33. Title IX provides that no person in the United States shall, on the basis of sex, be excluded from participation in, or be denied the benefits of, or be subjected to discrimination under any educational program or activity receiving Federal financial assistance.

34. Defendant BUSD is a public entity receiving federal funds which makes it subject to Title IX of the Educational Amendments of 1972.

35. Private right of action in for claims of Title IX violations is well-established. *Cannon v. University of Chicago*, 441 U.S. 677 (1979). The US Supreme Court has also allowed monetary damages for Title IX violations. *Franklin v. Gwinnett County Public Schools*, 503 U.S. 60 (1992).

36. The Rehabilitation Act Amendments of 1986 abrogate States' immunity under the Eleventh Amendment for Title IX violations. 42 USC 2000d-7.

**A. Bullying and Cyber-bullying.**

37. Plaintiffs refer to, and incorporate by reference, paragraphs 1 through 34 as though fully stated herein.

38. J.L. bullied and harassed M.B. by demanding naked pictures from her and subsequently threatening to put them up on the internet. This type of bullying is actionable under Title IX because it is based on sex (J.L. is male, M.B. is female), and was so severe and pervasive that it deprived M.B. of her education. *Davis v. Monroe County Bd. Of Educ.*, 526 U.S. 629, 676 (1999).

39. Because of the bullying M.B. experienced at the hands of J.L., she began missing school excessively and her GPA dropped from 3.5 to 2.8 during the 2013-2014 school year. She had to transfer to another school, but ultimately had to be home-schooled as a result of J.L.'s actions and defendants' failure to remedy the situation.

40. Plaintiffs are informed and believe, and on that basis allege, that BUSD was aware of this harassment which was widespread not only at Adams, but at other schools within the district. The failure to halt harassment and bullying of which a school district is aware constitutes intentional discrimination. *Franklin v. Gwinnet County Public Schools*, 502 U.S. 112 (1992).

**B. Discrimination Based on Sex**

41. Plaintiffs refer to, and incorporate by reference, paragraphs 1 through 38 as though fully stated herein.

42. Defendants' responsibility to address and respond to sexual harassment applies regardless of the potential application of any anti-bullying policy and regardless of whether a student has complained, asked the school to take action, or identified the harassment as a form of discrimination. *See* U.S. Dept. of Education, Office for Civil Rights, Dear Colleagues Letter, Oct. 26, 2010.

43. BUSD failed in its responsibilities to provide an environment free from discrimination and harassment to M.B. who suffered severe psychological trauma as a result of said failure.

44. BUSD had control over J.L., the harasser, and the campus of Adams Middle School, where

the harassment occurred. BUSD and its officials had authority to take corrective action to end the discrimination and harassment, but they failed to do so and ignored the many instances of student-on-student harassment at Adams Middle School, including of Plaintiff M.B. by J.L, despite widespread knowledge that these events were commonplace.

45. M.B. suffered such severe, pervasive, and objectively offensive harassment that it has deprived her of access to the educational opportunities or benefits provided by the school. Since the sexual harassment of M.B. began in early Fall 2013, she increasingly was either absent or tardy; was suspended by the school although she was a victim of the harassment perpetrated by J.L., and any alleged "lewd acts" were forced upon her by J.L.'s threats; her grades dropped significantly in 2014, to a GPA of 2.8 where previously it had been 3.5; finally, M.B. transferred to another school and now is in independent home study because she is too traumatized to be in a mainstream classroom. Clearly, J.L.'s harassment was so severe and pervasive that it has deprived M.B. of access to educational opportunities and benefits provided by the school.

46. BUSD had actual knowledge of the harassment at Adams Middle School, particularly in its bathrooms. Students have reported instances of sexual harassment, bullying and suspicious bathroom activities at Adams as early as March of 2010, some three years before M.B. was a student there. However, instead of monitoring the premises where these activities were knowingly taking place, some of the bathrooms were simply closed. The sexual harassment and forced sex continued in the open bathrooms, and BUSD had actual knowledge that its methods were ineffective in addressing sexual harassment.

47. BUSD was deliberately indifferent to the harassment occurring on a daily basis at Adams Middle School. BUSD was a notice for years of the troubling events involving sexual and other activities in the bathrooms, yet did nothing to even attempt to fix the problem, making M.B. a victim of sexual harassment and assault on multiple occasions.

## SECOND CLAIM FOR RELIEF

### (<u>Violation of Constitutional Rights, 42 USC 1983 Against MANKE, WHITNEY, DAILEY, EATON and KRUSE</u>)

48. Plaintiffs refer to, and incorporate by reference, paragraphs 1 through 45 as though fully

stated herein.

49. Section 1983 is presumptively available to remedy a state's ongoing violation of federal law. 42 USC 1983; *AlohaCare v. Haw. Dep't of Human Servs.,* 572 F.3d 740, 745 (9th Cir. 2009). Title IX does not preclude constitutional Section 1983 violations. *Fitzgerald v. Barnstable Sch. Comm.,* 129 S.Ct. 788 (2009).

**A. Actions Under Color of Law**

50. Plaintiffs refer to, and incorporate by reference, paragraphs 1 through 47 as though fully stated herein.

51. Persons acting under color of law are subject to suit under Section 1983.  INDIVIDUAL DEFENDANTS, acting under the color of state law, intentionally discriminated against M.B. as a member of an identifiable class (female student) by knowingly failing to address the widespread and pervasive sexual harassment and bullying of M.B. by J.L., as well as other female students despite numerous reports.

52. INDIVIDUAL DEFENDANTS violated M.B.'s rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution by actions, including but not limited to, depriving Plaintiff of equal protection under the law on the basis of sex.

53. INDIVIDUAL DEFENDANTS acted with deliberate indifference in responding to the harassment on the Adams campus, choosing to close bathrooms instead of monitoring them, despite knowledge that students were engaging in sexual acts in the bathrooms during school hours. For example, on February 28, 2014, an incident report stated that a boy was going to have sex with a girl in the bathroom; on February 3, 2014, a student told her friend and another student was texting her and asking for "stuff", and that they both were going to go to the bathroom to tell him it was not ok; instances of teachers suspecting and reporting to the principal that students were meeting in the bathrooms, "XXX-ing" in the bathrooms, being in the bathroom for a long time, going to the bathroom without permission, and that the teachers were "paranoid" about allowing students to go to the bathroom.

**B. Failure to Train**

54. Plaintiffs refer to, and incorporate by reference, paragraphs 1 through 51 as though fully

1    stated herein.

2        55. INDIVIDUAL DEFENDANTS inadequately communicated the anti-harassment and

3    bullying policies to students and school personnel despite of their awareness of "sexting" and other

4    multiple instances of sexual harassment on campus, including bullying and harassment of M.B. by

5    J.L. over a period of many months.

6        56. Plaintiffs are informed and believe, and thereon allege, that the only training session of

7    students on Internet safety was conducted at Adams only after the "sexting" and incidents of forced

8    sex were discovered by the Brentwood Police Department, which again, was much too late to

9    prevent M.B.'s bullying, harassment, and multiple instances of sexual assault.

10        57. INDIVIDUAL DEFENDANTS are responsible for student supervision. They had a duty of

11    care toward M.B. and all other students to prevent the known and rampant sexual harassment of

12    female students occurring on the premises of Adams Middle School.

13    **C.   Statutory Violation of Title IX**

14        Plaintiffs refer to, and incorporate by reference, paragraphs 1 through 55 as though fully stated

15    herein.

16        58.  INDIVIDUAL DEFENDANTS, and each of them, are liable for Title IX violations by

17    discriminating against M.B. on the basis of sex.

18        58. INDIVIDUAL DEFENDANTS failed in their responsibilities to provide an environment

19    free from discrimination and harassment to M.B. who suffered severe psychological trauma as a

20    result of said failure.

21        59. INDIVIDUAL DEFENDANTS had control over J.L., the harasser, and the campus of

22    Adams Middle School, where the harassment occurred. INDIVIDUAL DEFENDANTS had

23    authority to take corrective action to end the discrimination and harassment, but they failed to do so

24    and ignored the many instances of student-on-student harassment at Adams Middle School,

25    including of Plaintiff M.B. by J.L, despite widespread knowledge that these events were

26    commonplace.

27        60. M.B. suffered such severe, pervasive, and objectively offensive harassment that it has

28    deprived her of access to the educational opportunities or benefits provided by the school. Since the

sexual harassment of M.B. began in early Fall 2013, she increasingly was either absent or tardy; was suspended by the school although she was a victim of the harassment perpetrated by J.L., and any alleged "lewd acts" were forced upon her by J.L.'s threats; her grades dropped significantly in 2014, to a GPA of 2.8 where previously it had been 3.5; finally, M.B. transferred to another school and now is in independent home study because of trauma she sustained while in mainstream educational environment. Clearly, J.L.'s harassment was so severe and pervasive that it has deprived M.B. of access to educational opportunities and benefits provided by the school.

61. INDIVIDUAL DEFENDANTS had actual knowledge of the harassment at Adams Middle School, particularly in its bathrooms. Students have reported instances of sexual harassment, bullying and suspicious bathroom activities at Adams as early as March of 2010, some three years before M.B. was a student there. However, instead of monitoring the premises where these activities were knowingly taking place, some of the bathrooms were simply closed. The sexual harassment and forced sex continued in the open bathrooms, and school officials had actual knowledge that their methods were ineffective in addressing sexual harassment.

62. INDIVIDUAL DEFENDANTS were deliberately indifferent to the harassment occurring on a daily basis at Adams Middle School. INDIVIDUAL DEFENDANTS were on notice for years of the troubling events involving sexual and other activities in the bathrooms, yet did nothing to even attempt to fix the problem, making M.B. a victim of sexual harassment and assault on multiple occasions.

**THIRD CLAIM FOR RELIEF**

**(Violation of California Education Code §§ 200 *et seq*. Against BUSD)**

63. Plaintiffs refer to, and incorporate by reference, all preceding paragraphs as though fully stated herein.

62. California Education Code section 200 *et seq*. provides for a private right of action for intentional discrimination on the basis of sex, which includes sexual harassment.

63. Section 220 of the Education Code provides: "[n]o person shall be subjected to discrimination on the basis of …gender….in any program or activity conducted by an educational institution that receives, or benefits from, state financial assistance or enrolls pupils who receive

1    state student financial aid."

2        64. The California legislature specifically declared its intent that an action under the Education

3    Code shall be interpreted as consistent with Title IX of the Education Amendments of 1972, 20

4    USC 1681, *et seq.* (Cal. Ed. Code 201 (g)). A plaintiff may maintain an action for monetary

5    damages against a school district when the plaintiff alleges that she suffered severe, pervasive and

6    offensive harassment that effectively deprived the plaintiff of the right of equal access to

7    educational benefits and opportunities; the school had actual knowledge of the harassment; and the

8    school responded with deliberate indifference. *Donovan v. Poway Unified School Dist.*, 167

9    Cal.App.4th 567, 603-09 (2008).

10       65.  The California legislature recognized that all pupils enrolled in the state public schools

11   have the inalienable right to attend classes on school campuses that are safe, secure, and peaceful.

12   Cal. Ed. Code 32261 (a), Article I, section 28 (c) of the California State Constitution.

13       66.  J.L. bullied and harassed M.B. by demanding naked pictures from her and subsequently

14   threatening to put them up on the internet. This type of bullying is actionable under  Cal. Ed. Code

15   §§ 220 *et seq.* because it is based on gender (J.L. is male, M.B. is female), and was so severe and

16   pervasive that it deprived M.B. of her property (the iPod), had detrimental effect on her mental

17   health (M.B. required extensive counseling), had diminished her academic performance (GPA

18   dropped from 3.5 to 2.8), and caused substantial interference with M.B.'s ability to participate in

19   mainstream educational setting (she is now in independent home study).

20       67. Because of the bullying M.B. experienced at the hands of J.L., she began missing school

21   excessively and her GPA dropped from 3.5 to 2.8 during the 2013-2014 school year. She had to

22   transfer to another school, but ultimately had to be home-schooled as a result of J.L.'s actions and

23   defendants' failure to remedy the situation.

24       68. Plaintiffs are informed and believe, and on that basis allege, that BUSD had actual

25   knowledge of this harassment which was widespread not only at Adams, but at other schools

26   within the District. The failure to halt harassment and bullying of which a school district is aware

27   constitutes intentional discrimination. *Franklin v. Gwinnet County Public Schools*, 502 U.S. 112

28   (1992).

69. Defendants' responsibility to address and respond to sexual harassment applies regardless of the potential application of any anti-bullying policy and regardless of whether a student has complained, asked the school to take action, or identified the harassment as a form of discrimination. *See* U.S. Dept. of Education, Office for Civil Rights, Dear Colleagues Letter, Oct. 26, 2010.

70.  BUSD failed in its responsibilities to provide an environment free from discrimination and harassment to M.B. who suffered severe psychological trauma as a result of said failure.

71.  BUSD had control over J.L., the harasser, and the campus of Adams Middle School, where the harassment occurred. BUSD and its officials had authority to take corrective action to end the discrimination and harassment, but they failed to do so and ignored the many instances of student-on-student harassment at Adams Middle School, including of Plaintiff M.B. by J.L, despite widespread knowledge that these events were commonplace.

72. M.B. suffered such severe, pervasive, and objectively offensive harassment that it has deprived her of access to the educational opportunities or benefits provided by the school. Since the sexual harassment of M.B. began in early Fall 2013, she increasingly was either absent or tardy; was suspended by the school although she was a victim of the harassment perpetrated by J.L., and any alleged "lewd acts" were forced upon her by J.L.'s threats; her grades dropped significantly in 2014, to a GPA of 2.8 where previously it had been 3.5; finally, M.B. transferred to another school and now is in independent home study because she is too traumatized to be in a mainstream classroom. Clearly, J.L.'s harassment was so severe and pervasive that it has deprived M.B. of access to educational opportunities and benefits provided by the school.

73.  BUSD had actual knowledge of the harassment at Adams Middle School, particularly in its bathrooms. Students have reported instances of sexual harassment, bullying and suspicious bathroom activities at Adams as early as March of 2010, at least three years before M.B. was a student there. However, instead of monitoring the premises where these activities were knowingly taking place, some of the bathrooms were simply closed. The sexual harassment and forced sex continued in the open bathrooms, and BUSD had actual knowledge that its methods were ineffective in addressing sexual harassment.

74.  BUSD was deliberately indifferent to the harassment occurring on a daily basis at Adams Middle School. BUSD was a notice for years of the troubling events involving sexual and other activities in the bathrooms, yet did nothing to even attempt to fix the problem, making M.B. a victim of sexual harassment and assault on multiple occasions.

75.  BUSD and INDIVIDUAL DEFENDANTS acted with deliberate indifference in responding to the harassment on the Adams campus, choosing to close bathrooms instead of monitoring them, despite knowledge that students were engaging in sexual acts in the bathrooms during school hours. For example, on February 28, 2014, an incident report stated that a boy was going to have sex with a girl in the bathroom; on February 3, 2014, a student told her friend and another student was texting her and asking for "stuff", and that they both were going to go to the bathroom to tell him it was not ok; instances of teachers suspecting and reporting to the principal that students were meeting in the bathrooms, "XXX-ing" in the bathrooms, being in the bathroom for a long time, going to the bathroom without permission, and that the teachers were "paranoid" about allowing students to go to the bathroom.

**FOURTH CLAIM FOR RELIEF**

**(Negligence Against All Defendants)**

76. Plaintiffs refer to, and incorporate by reference, all preceding paragraphs as though fully stated herein.

77. Under the Tort Claims Act, BUSD is vicariously liable for injuries proximately caused by negligence of school personnel responsible for student supervision. Cal. Gov. Code 815.2 (a).

78. BUSD had a duty to supervise students on the premises of Adams Middle School. Cal. Ed. Code §44807.  Standard of care imposed upon school personnel in carrying out duty to supervise students is identical to that required in the performance of their other duties, i.e., that degree of care which a person of ordinary prudence, charged with comparable duties, would exercise under the same circumstances; either a total lack of supervision or ineffective supervision may constitute a lack of ordinary care on the part of those responsible for student supervision. *Hoff v. Vacaville Unified School Dist.*, 19 Cal.4th 925 (1998).

79.  INDIVIDUAL DEFENDANTS are responsible for student supervision. They had a duty of

care toward M.B. and all other students to prevent the known and rampant sexual harassment of female students occurring on the premises of Adams Middle School. INDIVIDUAL DEFENDANTS breached their duty by failing to supervise the conduct of students, giving rise to vicarious liability by BUSD.

80. The breach of duty by INDIVIDUAL DEFENDANTS/BUSD to supervise the students like J.L. caused M.B. serious psychological injury.  She has required extensive counseling and is now unable to participate in mainstream educational environment.

81. As a proximate result of Defendants' negligent acts, Plaintiffs have incurred damages as alleged heretofore.

**FIFTH CLAIM FOR RELIEF**

**(Violation of Unruh Civil Rights Act, Civil Code Section 51 *et seq.* Against All Defendants)**

87. Plaintiffs refer to, and incorporate by reference, all preceding paragraphs as though fully stated herein.

88.  The Unruh Civil Act, Cal. Civ. Code 51 *et seq.,* provides that all persons are entitled to full and equal services in all business establishments no matter what their, *inter alia*,  sex, and that no business establishment shall discriminate against person based on sex.

89. Cal. Civ. Code 52 (a) declares: "Whoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to Section 51, 51.5, or 51.6, is liable for each and every offense for the actual damages, ……… suffered by any person denied the rights provided in Section 51, 51.5, or 51.6." Thus, this section applies to INDIVIDUAL DEFENDANTS. *See also Aikins v. St. Helena Hosp.,* 843 F.Supp. 1329, 1339 (N.D.Cal. 1994).

90. A school district us a "business establishment" for purposes of the Unruh Civil Rights Act. Cal. Civ. Code 51.5.; *Nicole M. By and Through Jacqueline M. v. Martinez Unified School District*, 964 F.Supp. 1369 (N.D. Cal. 1997).

91. M.B. was deprived of advantages, privileges and services of Adams Middle School because of J.L.'s sexual harassment, of which BUSD and INDIVIDUAL DEFENDANTS were aware. Since the sexual harassment of M.B. began in early Fall 2013, she increasingly was either absent or tardy; was suspended by the school although she was a victim of the harassment perpetrated by

J.L., and any alleged "lewd acts" were forced upon her by J.L.'s threats; her grades dropped significantly in 2014, to a GPA of 2.8 where previously it had been 3.5; finally, M.B. transferred to another school and now is in independent home study because she is too traumatized to be in a mainstream classroom. Clearly, J.L.'s harassment was so severe and pervasive that it has deprived M.B. of access to educational opportunities and benefits provided by the school.

92. BUSD and INDIVIDUAL DEFENDANTS intentionally discriminated against M.B. and other female students at Adams based on their sex.

93. As a proximate result of Defendants' intentional acts, Plaintiffs have incurred damages as alleged heretofore.

## SIXTH CLAIM FOR RELIEF

### (Intentional Infliction of Emotional Distress Against All Defendants)

94.  Plaintiffs incorporate and reallege by reference all the foregoing paragraphs, as though fully set forth herein.

95. The actions of Defendants as alleged herein were outrageous, malicious and intended to and did inflict emotional distress and humiliation upon Plaintiffs.

96. As a proximate result of Defendants' intentional acts, Plaintiffs have incurred damages as alleged heretofore.

## JURY DEMAND

Plaintiffs hereby demand that this matter be tried to a jury.

///
///
///
///
///
///
///
///
///

1

**PRAYER**

2        WHEREFORE, Plaintiffs pray for judgment as follows:

3    1.  Compensatory damages for emotional distress and medical expenses, past and future;

4    2.  Attorney fees and costs;

5    3.  Punitive damages;

6    4.  Such other and further relief as the court deems just and proper.

7

8   Dated:  January 21, 2015                    HINTON ALFERT & KAHN LLP

9

10                                      By:_____/s/_____
                                              PETER W. ALFERT
11                                            Attorneys for Plaintiffs

12

13

14

15

16

17  Dated:  January 21, 2015                    LAW OFFICES OF TODD BOLEY

18

19                                      By:_____/s/_____
                                              TODD A. BOLEY
20                                            Attorneys for Plaintiffs

21

22

23

24

25

26

27

28