UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATALIE BURKE, et al., | Case No.15-cv-00286-EDL |
| Plaintiffs, | |
| v. | **ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SANCTIONS AGAINST ESM/DONOHOE** |
| BRENTWOOD UNION SCHOOL DISTRICT, et al., | |
| Defendants. | Re: Dkt. Nos. 239, 251 |

This lawsuit is based on the alleged sexual harassment and assault of Plaintiff M.B., while a student at Adams Middle School ("AMS") in Defendant Brentwood Unified School District ("BUSD"), by J.L., who was also a student there.  Plaintiff Natalie Burke brought this action on her own behalf and as guardian ad litem for her daughter, Plaintiff M.B.  In addition to Defendant BUSD, Plaintiffs sued four individuals who were school officials during the relevant time period: Defendant Matthew Dailey, who was vice principal of AMS, Defendant Kelly Manke, who was principal of AMS, Defendant Jennifer Whitney, who was vice principal of AMS, and Defendant Dana Eaton, who was superintendent of BUSD.

Plaintiffs filed their lawsuit on January 21, 2015.  Dkt. No. 1.  Plaintiffs brought claims for violations of Title IX, §1983, California Education Code §200, and the Unruh Act, as well as state law claims for negligence and the intentional infliction of emotional distress.  In April 2017, the Court largely denied Defendants' motion for summary judgment with the exception of Plaintiffs' Unruh Act claim and all claims against Defendant Dana Eaton, for which the motion for summary judgment was granted.  Dkt. No. 200.  The parties settled the case in August 2017, and the Court confirmed the settlement of Plaintiff M.B.'s claims on November 8, 2017.  Dkt. No. 241. Thereafter, the Court granted the parties' stipulation to dismiss the case.  Dkt. No. 248.

1    Now before the Court is Plaintiff M.B.'s motion for sanctions against the law firm

2    representing Defendants and one particular attorney at that firm -- specifically, the law firm of

3    Edrington, Schirmer & Murphy and attorney Dolores Donohoe, who was Defendants' lead

4    attorney coordinating discovery (collectively, "ESM/Donohoe").  Plaintiff contends that

5    ESM/Donohoe deliberately concealed critical evidence in violation of multiple Court orders

6    requiring its production.  As a sanction, Plaintiff asks the Court to order ESM/Donohoe to pay

7    $156,724.10 in costs and $382,142.50 in fees she incurred as a result of ESM/Donohoe's alleged

8    misconduct, for a total of $538,866.60.  ESM/Donohoe opposed the motion.[1]  For the following

9    reasons, the Court GRANTS the motion in part and orders ESM/Donohoe to pay a sanction of

10   $10,000 to Plaintiff M.B. within 30 days of the date of this order.

11   **I.      BACKGROUND**

12        **A.      Settlement**

13        As noted above, the parties settled this case in August 2017 after engaging in multiple

14   rounds of settlement conferences overseen by a magistrate judge.  The final settlement discussions

15   were held on August 29, 2017, during which time the parties agreed to settle the case for $2

16   million.  Murphy Decl., ¶¶ 5-9; Donohoe Decl., ¶¶ 8-9.  Neither Mr. Murphy nor Ms. Donohoe

17   was included in the final settlement discussions, notwithstanding the fact that they were lead

18   attorneys for BUSD.  Id.  Mr. Leone, counsel for the individual Defendants, was the lead

19   negotiator of the settlement.[2]

20        According to ESM/Donohoe, Plaintiff did not disclose at the time the settlement was

21   reached in principle and the settlement agreement was negotiated that she intended to seek

22   sanctions against ESM or Donohoe.  Leone Decl., ¶ 6.  However, ESM/Donohoe acknowledges

---

[1] In connection with its opposition, ESM/Donohoe has also filed an administration motion to seal
certain exhibits that it has designated as confidential under the protective order.  Dkt. No. 251.
Because these documents reveal the identifies of minors, the Court finds good cause to file these
documents under seal and ESM/Donohoe's motion is GRANTED.

[2] On September 19, 2016, individual Defendants Matthew Dailey, Kelly Manke, and Jennifer
Whitney filed notices of substitution of attorney, substituting attorney Louis Leone and the Leone
& Alberts firm in place of Donohoe and the Edrington Schirmer & Murphy firm.  Dkt. Nos. 114-
17.

United States District Court
Northern District of California

1  that Plaintiff's counsel, Mr. Boley, told Mr. Leone that he intended to "bring to the court's

2  attention certain misconduct regarding Ms. Donohoe" while the parties were exchanging edits to

3  the draft settlement agreement.   Opp. at 3; Leone Decl., ¶ 5.  This intention was disclosed after

4  Mr. Boley edited the "Release and Discharge" paragraph of the draft to replace "attorneys and

5  representatives" with "non-attorney representatives."  Leone Decl., ¶¶ 3-4; Donohoe Decl., ¶ 16,

6  Ex. A at 1.  When pressed by Mr. Murphy on the relief Plaintiff expected to seek, Mr. Boley said

7  that he wished to preserve the option to bring the issue of Ms. Donohoe's alleged misconduct to

8  the Court's attention beyond the settlement agreement, including the option of seeking referral of

9  Ms. Donohoe to the Court's committee on professional responsibility.  Murphy Decl., ¶ 13.  Mr.

10  Boley specifically referenced Ms. Donohoe's perceived discovery misconduct as his focus.  Id.

11      Plaintiffs filed their motion for Court approval of minor Plaintiff M.B.'s claims on October

12  3, 2017.  Dkt. No. 237.  The Court held a hearing on November 7, 2017.  Dkt. No. 240.  On

13  November 3, 2017 -- four days prior to the hearing -- Plaintiff filed her motion for sanctions

14  against ESM/Donohoe.  Dkt. No. 239.  Plaintiff's counsel had provided a draft of the motion for

15  sanctions to Mr. Murphy, BUSD's counsel, on October 27, 2017.  Murphy Decl., ¶ 14; Donohoe

16  Decl., ¶ 11.  Mr. Leone learned of the motion for sanctions when it was filed on November 3,

17  2017.  Leone Decl., ¶ 6.

18      At the hearing on the motion to approve the compromise of Plaintiff M.B.'s claims, the

19  Court asked the parties if the pending motion for sanctions affected the Court's ability to decide

20  the motion for approval of the compromise of Plaintiff M.B.'s claims.  The parties stated that it

21  did not impact the Court's ability to do so.

22      **B.**    **Discovery Disputes**

23      The parties brought numerous discovery disputes before the Court throughout this

24  litigation that are relevant to Plaintiff's motion for sanctions.  On October 5, 2015, Plaintiffs filed

25  a motion to compel Defendants to produce documents from a variety of BUSD sources regarding

26  J.L.  Dkt. No. 29.  The Court granted in part the motion to compel on November 6, 2015, finding

27  that one request for "any and all documents relating to student J.L." was overbroad, but ordering

28  the production of specific records (i.e., attendance records, discipline records, and hall passes)

United States District Court<br>Northern District of California

sought by that particular request (the "November 6 Order") as well as the production of all

responsive documents to the remaining challenged requests.  Dkt. No. 35.  The conduct that is the

subject of Plaintiff's motion for sanction largely stems from this motion, the resulting order, and

ESM/Donohoe's response to it, so it is useful to focus on the precise documents that Defendants

were ordered to produce:

> 1. Request for Production No. 7
>
> The request extends to "any and all documents relating to student J.L." which is overbroad.  However, the request also properly seeks J.L.'s attendance records, discipline records and hall passes and such records contained in J.L.'s student file and maintained by Defendant BUSD shall be produced subject to the Federal Education Privacy Act (FERPA) U.S.C. § 1232g(b)(1).
>
> 2. Request for Production No. 8
>
> This request seeks documents relating to complaints made against J.L. by students at Adams Middle School relating to his activities and/or conduct.  This request seeks relevant information.  Any complaints kept in a student's file that is maintained by Defendant BUSD, whether in J.L.'s student file, or the files of any student making such a complaint, shall be produced subject to FERPA.
>
> 3. Request for Production No. 9
>
> This request seeks documents related to employee complaints regarding J.L.  These documents seek relevant information.  Records of complaints against J.L. that are contained in his file or the files of other students maintained by Defendant BUSD shall be produced subject to FERPA.
>
> 4. Request for Production No. 13
>
> This request seeks documents related to misconduct committed by J.L. on the premises of Adams Middle School, while he was a student at Adams Middle School.  The request seeks relevant information.  Any such records contained in student files, either J.L.'s or any other student's, maintained by Defendant BUSD shall be produced subject to FERPA.
>
> 5. Request for Production No. 14
>
> This request seeks documents relating to incidents involving M.B. and J.L. and seeks relevant information.  Records relating to these incidents that are contained in any student file maintained by BUSD shall be produced subject to FERPA.

Dkt. No. 35, the November 6 Order.

In response to the Court's order, Ms. Donohoe contacted Greg Hetrick, a BUSD employee,

4

to ask him to search for the documents indicated in the order.  Donohoe Decl., ¶ 23, Ex. G.  She told him that BUSD needed to produce: (1) "His attendance records, discipline records and hall passes;" (2) "Complaints made by students or staff about him;" and (3) "Documents relating to incidents involving [M.B.] and [J.L.]"  Id.  She further explained that she "need[ed] any documents relating to other complaints that are not in [J.L.'s] file."  Id.  Ms. Donohoe explains in a declaration submitted with her opposition to the motion for sanctions that the reference to records that were not in J.L.'s student file was intended to emphasize the need to look for responsive documents in other students' files, rather than searching for all documents generally.  Donohoe Decl., ¶ 23.  On November 16, 2015, Ms. Donohoe followed-up with Mr. Hetrick and asked him to "search emails for documents relating to, inappropriate use of social media, communications with Natalie Burke and anything to do with the [M.B./J.L.] incident" in connection with upcoming depositions.  Donohoe Decl., ¶ 25, Ex. H.

On or around December 7, 2015, EMS/Donohoe produced documents in response to the November 6 Order.  Donohoe Decl., ¶ 29.  This production included a responsive document that was located in another student's file.  Donohoe Decl., ¶ 29, Ex. J.

On May 25, 2016, Plaintiffs moved to reopen discovery and compel certain depositions.  Dkt. No. 59.  Plaintiffs filed this motion after receiving Defendants' production of relevant discovery after the fact discovery cut-off date, including documents about at least one similar incident involving student J.L.  On July 6, 2016, the Court granted the motion to reopen discovery on certain limited issues set forth in its written order (the "July 6 Order").  Dkt. No. 80.  It granted relief so that Plaintiffs could take four additional depositions, and ordered the parties to meet and confer to schedule the depositions "after the production of any relevant additional documents."  Id. at 9, 10, 11.

On July 19, 2016, in light of the Court's order regarding the production of additional relevant documents before further depositions were scheduled, Plaintiffs' counsel sent an email to Donohoe asking whether any documents were still being withheld.   Alfert Decl., ¶ 23, Ex. K.  Donohoe responded that Defendants were not withholding any relevant documents.  Id.  Specifically, she explained:

United States District Court
Northern District of California

I read the order the same way you do - I have instructed all witnesses . . . and the administration to look for any documents relating to JL, the 2/3/14 incident, the 11/6/13 incident . . . As of today, I have not located any additional documents responsive to the subject matter.  If any are located, they will be provided to you.  Be assured, I am not withholding records and do not appreciate the accusation that I or my client is doing so.

Id.  Between July 22, 2016 and August 17, 2016, the Court-ordered depositions were taken, and Defendants did not produce any additional documents in conjunction with those depositions. Alfert Decl., ¶ 24.  Defendants did not produce any additional documents as a result of the July 6 Order because they say that none were located.  Donohoe Decl., ¶ 53.

On August 27, 2016, Plaintiffs filed a motion to enforce the Court's July 6 Order, compel depositions, and to compel the production of electronically stored information ("ESI").  Dkt. No. 102.  Prior to the hearing on the motion, the Court ordered the parties to meet and confer.  Dkt. No. 107.  During this meet and confer, Defendants' counsel told Plaintiffs' counsel that Defendants had not searched for emails relating to J.L.  Alfert Decl., ¶ 36, Ex. R.  Donohoe explained that Defendants did not search emails based on its position that the Court's November 6 Order precluded it.  Id.  During the hearing on the motion, Donohoe further explained that she misunderstood the November 6 Order to have excluded the production of misconduct complaints about J.L. that were not in a student file.[3]  Alfert Decl., ¶ 125, Ex. XX.

As the Court explained, its November 6 Order was never intended to limit production only to responsive documents that were located in student files.  Instead, the November 6 Order overruled Defendants' objections, except as to the overbreadth of Request No. 7 as discussed above, and ordered Defendants to produce documents that were responsive to the requests without limitation as to the format or source of the documents.  The reference to student files was only meant to indicate that documents in student files that are otherwise protected from disclosure must be produced pursuant to the Court's order as provided by the Federal Education Privacy Act, 20

---

[3] As background, ESM/Donohoe explain that a student file typically consists of three parts: (1) the cumulative file with a student's history from kindergarten through high school; (2) the discipline file with documents about investigations conducted, discipline imposed, and any expulsions or suspensions; and (3) the attendance file, which tracks a student's attendance for each year. Donohoe Decl., ¶ 13.

United States District Court
Northern District of California

1    U.S.C. § 1232g.  However, the Court accepted Ms. Donohoe's explanation that she had a good

2    faith misinterpretation of the November 6 Order.  Id.  During the hearing, the Court granted

3    Plaintiffs' motion to compel and ordered Defendants to produce relevant emails within two weeks,

4    which was memorialized in a minute entry on the case docket on September 6, 2016 (the

5    "September 6 Order").  Dkt. No. 110.

6         Defendants started to produce documents by September 20, 2016, as required by the

7    September 6, 2016 Order.  Donohoe Decl., ¶¶ 63, 74, Ex. LL.  At the same time, BUSD began

8    researching its email system in an attempt to locate documents that were not readily accessible

9    because of the problems that had been discovered with the journaling system.  Donohoe Decl., ¶

10   64.  This investigation process took several months and the retention of a forensic investigator,

11   and BUSD produced documents to Plaintiffs on a rolling basis through May 2017.  Donohoe

12   Decl., ¶ 64.

13        On October 14, 2016, Plaintiffs filed a motion to compel the production of ESI and for

14   discovery relating to the deletion of the email accounts of Defendants Dailey and Manke during

15   the litigation.  Dkt. No. 138.

16        On May 5, 2017, Defendant BUSD produced a privilege log for 774 emails withheld on

17   the basis of the attorney-client and work product privileges.  Alfert Decl., ¶ 60, Ex. Z.  On May

18   22, 2017, Plaintiffs filed a motion to deem the attorney-client privilege waived and to compel

19   Defendants' production of the withheld documents.  Dkt. No. 204.  On July 14, 2017, the Court

20   granted in part and denied in part the motion (the "July 14 Order").  Dkt. No. 229.  The Court

21   found that Defendant BUSD had waived the attorney-client privilege as to all pre-suit and post-

22   suit documents on the May 5 privilege log that were not "core" attorney-client communications

23   because of its "extraordinary delay" in providing the privilege log and because the privilege log

24   did not comply with the Court's standing order.  Id.  It defined "core" post-suit attorney-client

25   privileged communications as those that "refer[ ] to counsel's status reports to their client and

26   carrier and/or counsel's communications relating to settlement negotiations."  Id.  The Court

27   ordered production of non-core documents by August 10, 2017.  Id.  In response to the July 14

28   Order, BUSD produced 9,904 emails and other documents on August 10, 2017 (the "Waiver

7

1    Production").  Alfert Decl., ¶ 26.

2    **II.    LEGAL STANDARD**

3           Rule 37(b)(2) permits the court to impose sanctions against a party for its "fail[ure] to obey

4    an order to provide or permit discovery."  Fed. R. Civ. P. 37(b)(2)(A).  Rule 37 lists seven types of

5    sanctions a court may impose as a result of a failure to obey a discovery order.  Fed. R. Civ. P.

6    37(b)(2)(A)(ii).  In addition to or in lieu of those seven specific sanctions, the court may also order

7    the payment of expenses, including attorneys' fees, for the "reasonable expenses . . . caused by the

8    failure, unless the failure was substantially justified or other circumstances make an award of

9    expenses unjust."  Fed. R. Civ. P. 37(b)(2)(C).  If the court finds that an order to pay expenses is

10   warranted for violation of a discovery order, it may order payment by "the disobedient party, the

11   attorney advising that party."  Id.

12          The imposition of a sanction for failure to follow a discovery order is within the court's

13   discretion.  See Computer Task Grp., Inc. v. Brotby, 364 F.3d 1112, 1115 (9th Cir. 2004).  One

14   factor to take into account to determine if sanctions would be unjust is whether the attorney

15   disregarded a discovery order in bad faith.  See Hyde & Drath v. Baker, 24 F.3d 1162, 1171 (9th

16   Cir. 1994.  "The lack of bad faith does not immunize a party or its attorney from sanctions,

17   although a finding of good or bad faith may be a consideration in determining whether imposition

18   of sanctions would be unjust, and the severity of the sanctions."  Keithley v. Homestore.com, Inc.,

19   2008 WL 3833384, at *2-3 (N.D. Cal. Aug. 12, 2008).  See also Hyde &, 24 F.3d at 1171 ("We

20   have not required a finding of bad faith on the part of the attorney before imposing sanctions under

21   Rule 37.").

22          Rule 26(g) also authorizes a court to impose sanctions against a party that violates the

23   requirement that it sign disclosures and discovery responses.  Fed. R. Civ. P. 26(g) ("If a

24   certification violates this rule without substantial justification, the court, on motion or on its own,

25   must impose an appropriate sanction on the signer, the party on whose behalf the signer was

26   acting, or both.").  A sanction for violation of Rule 26(g) "may include an order to pay the

27   reasonable expenses, including attorney's fees, caused by the violation."  Id.

28          An award of attorneys' fees and costs is also permitted under 28 U.S.C. § 1927, which

United States District Court
Northern District of California

8

provides that:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.

Finally, a court may also "levy sanctions pursuant to its inherent power for 'willful disobedience of a court order . . . or when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" Evon v. Law Offices of Sidney Mickell, 688 F.3d 1015, 1035 (9th Cir. 2012) (quoting Fink v. Gomez, 239 F.3d 989, 991 (9th Cir. 2001)). "A determination that a party was willfully disobedient is different from a finding that a party acted in bad faith. Either supports the imposition of sanctions." Id. "[A] 'willful' violation of a court order does not require proof of mental intent such as bad faith or an improper motive, but rather, it is enough that a party acted deliberately."[4] Id. (upholding district court's grant of sanctions for disobeying a court order even where "the district judge said that he understood that [the sanctioned attorney's] conduct was 'inadvertent'").

Generally, courts require clear and convincing evidence that sanctions are warranted under the court's inherent authority and 28 U.S.C. § 1927, although the Ninth Circuit has not definitively addressed the issue. Lucas v. Jos. A. Bank Clothiers, Inc., 217 F. Supp. 3d 1200, 1204 (citing Lahiri v. Universal Music & Video Distribution Corp., 606 F.3d 1216, 1219 (9th Cir. 2010); Eastwood v. Nat'l Enquirer, Inc., 123 F.3d 1249, 1252 n.5 (9th Cir. 1997); and Shepherd v. Am. Broad Cos., Inc. 62 F.3d 1469, 1478 (D.C. Cir. 1995)). Some courts, however, have applied the preponderance standard. See In re Napster, Inc. Copyright Litig., 462 F. Supp. 2d 1050, 1072 (N.D. Cal. 2006). Applying a clear and convincing standard "is a means of protecting society

---

[4] ESM/Donohoe's opposition focuses on the authority to impose sanctions for acting in "bad faith." As the Ninth Circuit has repeatedly addressed in Fink and later in Evon the court has the inherent power to sanction a party for "willful disobedience" or acting in "bad faith," but these are separate inquiries. The Ninth Circuit noted in Fink that courts sometimes use "bad faith" as a short cut for discussing both bases for sanctions, which causes some confusion, but clarified that willfulness or bad faith are adequate to support the imposition of sanctions. See Fink, 239 F.3d at 992.

1    from the consequences of grave decisions too lightly reached."  Eastwood, 123 F.3d at 1252 n.5.

2    **III.    DISCUSSION**

3            In her motion, Plaintiff paints a picture of intentional, bad faith discovery practices by

4    ESM/Donohoe that it used to gain an unfair advantage for its clients throughout this litigation.

5    Plaintiff contends that this conduct made it more difficult to advance her claims, particularly to

6    oppose Defendants' motion for summary judgment, and substantially delayed settlement of the

7    case.  As a result of this alleged misconduct, Plaintiff asks the Court to enter sanctions against

8    ESM/Donohoe to recover substantial additional costs that she claims to have incurred.

9            While the Court agrees that BUSD's discovery efforts were halting, somewhat

10   disorganized, and inefficient, as evidenced by the many discovery disputes that came before the

11   Court, the need to call in a forensic investigator, and the belated document productions, the Court

12   does not conclude that ESM/Donohoe acted in bad faith.  Plaintiff ascribes treachery to actions

13   that are more accurately described as blunders.

14           That said, BUSD's production of discovery in this case left much to be desired.  Plaintiff's

15   motion for sanctions is not frivolous, and the Court will address the substance of the motion

16   further below.  As an initial matter, however, the Court must first consider ESM/Donohoe's

17   contention that the parties' settlement agreement prohibits Plaintiff's motion and the imposition of

18   sanctions.

19           **A.      The Settlement Agreement Does Not Preclude Plaintiff's Motion for Sanctions**

20           ESM/Donohoe take the position that Plaintiff's motion for sanctions is forestalled by

21   certain provisions of the settlement agreement that they argue release any claim for attorneys' fees

22   and costs that Plaintiff claims.  They also appeal to case law that holds that a party to a settlement

23   agreement cannot secretly withhold claims.  None of these arguments are ultimately persuasive.

24   ESM/Donohoe relies heavily on the Ninth Circuit's opinion in Transpac Constr. Co. v. Clark &

25   Groff, Eng'rs, Inc., 466 F.2d 823 (9th Cir. 1972), which applied Oregon law.[5]  In that case, there

26   was a dispute about the scope of the release in a settlement agreement, an agreement which took

27   _____

28   [5] California law is generally aligned with the Oregon law discussed in Transpac.  See Jefferson v.
     Dep't of Youth Auth., 28 Cal. 4th 299 (2002).

United States District Court
Northern District of California

1    the form of a letter.  Id. at 825.  The question was whether one party's secret, undisclosed intention

2    to pursue tort claims against the other after the settlement agreement was executed could defeat an

3    otherwise full release of all claims.  Id. at 826.  The Ninth Circuit held that, under Oregon Law, a

4    secret intention that a settlement be of limited scope could *not* render a settlement agreement

5    inoperative.  Id.  Thus, the Ninth Circuit affirmed the lower court's determination that the

6    agreement fully released all claims, notwithstanding one party's undisclosed intention that it be

7    more limited.  Id. at 828.

8         Here, however, Plaintiff's counsel told Defendants' counsel that Plaintiff intended to seek

9    redress for Ms. Donohoe's perceived misconduct during discovery.  While he did not explicitly

10   state that Plaintiff intended to seek a monetary award, Defendants' lawyers should have been at

11   least on notice that Mr. Boley's comments about seeking redress of the alleged discovery abuses

12   could include the possibility of sanctions.

13        ESM/Donohoe further argues that Plaintiff's claim for "compensatory" sanctions is

14   foreclosed by the terms of the settlement agreement.  The "Release and Discharge" provision of

15   the settlement agreement states:

16           In consideration for the payments to the persons at the times set
             forth in Sections 2.1 and 2.2 to this Settlement Agreement, the
17           Plaintiffs hereby completely release and forever discharge the
             Defendant and the Defendant's past, present and future officers,
18           board members, employees (past and present), agents, servants, non-
             attorney representatives . . . from any and all past, present, or future
19           claims, demands, obligations, actions, causes of action, wrongful-
             death claims, rights, damages, costs, losses of services, expenses and
20           compensation of any nature whatsoever . . .

21   Donohoe Decl., ¶ 16, Ex. A at 1 (emphasis added).  It goes on to specifically address a release for

22   attorneys' fees and costs: "Plaintiffs and Defendant specifically release each other for costs and

23   attorneys' fees incurred in connection with this litigation, the Complaint and the Settlement

24   Agreement."  Id. at 3.  The settlement agreement confirms that it "contains the entire agreement

25   between the Plaintiffs and Northern California Relief on behalf of Defendant with regard to the

26   matters set forth in it . . . "  Id. at 4.

27        ESM/Donohoe contends that it is BUSD's agent and, therefore, Plaintiff released claims as

28   to it.  Plaintiff disagrees and argues that under the interpretive canon of *expressio unius est*

*exclusio alterius*, the deletion of the term "attorney" and replacement of the term "representatives" with "non-attorney representatives" demonstrates that the parties did not intend for claims related to attorneys to be released under the settlement agreement. While the term "agent" would generally be interpreted to include a party's attorneys, the use of the term "agent" and "non-attorney representatives" in the same list of individuals released under the settlement agreement is ambiguous. The use of "non-attorney representatives" indicates that the parties contemplated that "attorney" or "attorney representatives" could be a category of individuals included in the list, but neither "attorney" nor "attorney representatives" was included in the final, executed version of the settlement agreement. Instead, Plaintiff put forward evidence showing that her attorneys intentionally removed the term "attorney" from the list, and Defendants did not protest that edit to the draft. Therefore, the parties did not agree to include claims against attorneys in the release provision of the settlement agreement.

ESM/Donohoe also contends that the express waiver of any additional claim to attorneys' fees and costs prevents Plaintiff's motion for sanctions. In HM Electronics, Inc. v. R.F. Technologies, Inc., 171 F. Supp. 3d 1020 (S.D. Cal. 2016), the court recognized that a party can "bargain away compensatory sanctions," although parties cannot bargain away the court's power to impose punitive or other sanctions. Id. at 1028-29. In HM Electronics, the parties included an exchange of monetary payment for a broad release of claims in the settlement agreement that included

> any and all actions, causes of actions, claims, debts, disabilities, accounts, demands, damages, claims for indemnification or contributions, costs, expenses or fees whatsoever, whether known or unknown, certain or speculative, asserted or unasserted, which concern the claims and allegations in this Action or the subject matter thereof . . .

Id. at 1029.

The release in the settlement agreement between Plaintiff and BUSD, however, is not quite so clear. For instance, it does not state that it covers claims that are "known or unknown, certain or speculative, asserted or unasserted," language which the court relied upon heavily in finding that the claims for compensatory sanctions in HM Electronics had been bargained away. Id. at 1030. This is a close question, but the release in the settlement agreement between Plaintiff and

United States District Court
Northern District of California

1    BUSD was not unequivocal about releasing *all* claims for attorneys' fees and costs, including

2    those based on discovery sanctions.  Moreover, <u>HM Electronics</u> relied on the general release

3    provision to support its ruling, which cannot support a similar ruling in this case because the Court

4    has found that the parties did not intend to release claims against each side's attorneys.

5    Accordingly, the settlement agreement does not preclude Plaintiff's motion for sanctions.

6         **B.       Plaintiff Has Established a Limited Basis for Sanctions against EMS/Donohoe**

7         Plaintiff brought her motions for sanctions under four separate sources of authority -- Rule

8    37(b)(2), Rule 26(g), 28 U.S.C. § 1927, and the Court's inherent power to impose sanctions.  The

9    Court addresses each one in turn.

10            **1.       Rule 37(b)(2)**

11        Plaintiff contends that ESM/Donohoe violated four Court orders: the November 6 Order

12   (J.L. documents), the July 6 Order (further depositions), the September 6 Order (ESI), and the July

13   14 Order (privilege log).  A court may order sanctions for violation of a discovery order so long as

14   it is just.  <u>See</u> Fed. R. Civ. P. 37(b)(2)(A) (the court "may issue further just orders" if a party "fails

15   to obey an order to provide or permit discovery").  It may impose monetary sanctions for the

16   reasonable expenses caused by the failure, unless the failure was substantially justified or other

17   circumstances make the award unjust.  <u>See</u> Fed. R. Civ. P. 37(b)(2)(C).

18        **November 6 Order:**  As discussed at the hearing, the Court declines to revisit its earlier

19   determination that it accepts Ms. Donohoe's explanation that she misunderstood the Court's

20   November 6 Order as not requiring the production of ESI.  The Court acknowledges that the

21   November 6 Order was not a model of clarity and Ms. Donohoe's interpretation, while certainly

22   not what the Court intended, was not unreasonable.  Although Ms. Donohoe may have

23   inadvertently caused Defendants to violate the Court's November 6 Order, an award of attorneys'

24   fees as a sanction is not just under these circumstances, particularly where Ms. Donohoe told

25   Plaintiff's counsel about her interpretation of the order multiple times and Plaintiff's counsel

26   waited nearly a year to file a motion to compel the production of ESI.

27        **July 6 Order:**  Plaintiff's main claim with respect to the July 6 Order seems to be that

28   Defendants did not produce any additional documents relating to the deposition of elementary

13

United States District Court
Northern District of California

1   school principal Erlich, even though there were emails that ultimately were ordered produced.

2   The Court credits Ms. Donohoe's explanation that her failure to produce responsive documents

3   ahead of the deposition was a result of her ongoing misunderstanding that the November 6 Order

4   did not require the search of ESI.  Her explanation is supported by contemporaneous emails

5   between Ms. Donohoe and Plaintiff's counsel in which the production of emails is not discussed

6   or suggested.  Dkt. No. 239, Ex. K.  The Court does not find any basis for imposing sanctions for a

7   violation of the July 6 Order.

8          **September 6 Order:**  In this order, the Court directed BUSD to search for and produce

9   within two weeks responsive ESI.  It was at this time that the Court corrected Ms. Donohoe's

10  earlier misunderstanding that ESI was not discoverable in this case.  Plaintiff argued in her motion

11  that Defendants withheld key evidence until the Waiver Production in 2017, citing numerous

12  documents that she contends should have been produced much sooner.  Her motion did not

13  specify, however, whether any of these belatedly produced documents were withheld in violation

14  of a Court order.

15         At the hearing, the Court asked Plaintiff to identify those documents that were withheld in

16  violation of a Court order.  Plaintiff pointed to only one document, a September 20, 2013 email

17  from Jan Steed to Defendants Manke and Dailey, among others, discussing J.L.'s intradistrict

18  transfer to AMS and noting that "[i]n the event student continues to be disruptive, his transfer to

19  remain at AMS can be revoked."  Dkt. No. 239, Ex. W (the "Steed Email").  The version of this

20  document that was included in Plaintiff's Exhibit W was produced in August 2017 as part of the

21  Waiver Production.  ESM/Donohoe conceded that this email should have been produced sooner

22  and it was produced late in violation of the Court's September 6 Order.  However, ESM/Donohoe

23  also represented that multiple versions of this email were produced in January 2017, much earlier

24  than the version that was later included in the Waiver Production.

25         In order to clarify when the Steed Email was first produced, the Court issued an order on

26  January 19, 2018 directing the parties to file a joint supplemental brief on the issue.  In the brief

27  that the parties filed on January 26, 2018, Plaintiff acknowledged that the Steed Email was

28  produced to her on January 27, 2017, four months past the date that BUSD was ordered to produce

United States District Court
Northern District of California

1   the document.  Dkt. No. 259.  Thus, Plaintiff has shown that ESM/Donohoe violated the Court's

2   September 6 Order.  She has also demonstrated the prejudice she suffered from the late

3   production.  The Steed Email is probative of Defendants' knowledge of J.L.'s misbehavior at

4   school, which was relevant to establishing Defendants' liability in this case, yet it was produced

5   many months after the parties completed their first round of briefing on the motion for summary

6   judgment and only days before Plaintiffs filed their supplemental opposition to the motion for

7   summary judgment.  Moreover, the evidence reflects that BUSD originally collected this email on

8   November 21, 2015, so there is no reasonable excuse for its failure to produce it within two weeks

9   of the Court's September 6 Order.  Accordingly, the Court finds that ESM/Donohoe did not have

10  substantial justification for violating the Court's order.

11          In addition to responding to the Court's question about the Steed Email, Plaintiff also

12  argued in the joint supplemental brief that other emails were not produced until the Waiver

13  Production and defense counsel has provided no explanation for not producing them sooner.  For

14  example, Plaintiff points to an email from BUSD's Director of Student Services with the subject

15  line "Goodbye Mr. J.L." after J.L. was expelled from the middle school that discussed removing

16  J.L. from the district based on falsification of his residency at a time prior to the sexual assault of

17  M.B. (Dkt. No. 239, Ex. Y).  Plaintiff does not state, however, whether defense counsel violated a

18  Court order by withholding these documents until the Waiver Production.  ESM/Donohoe respond

19  persuasively that that email was not produced earlier because it was not about J.L.'s misconduct,

20  but was really about his mother's misconduct in falsifying the residency verification that allowed

21  J.L. to attend AMS.  The only other documents that Plaintiff referred to specifically as justifying

22  sanctions were the three emails from Plaintiff's parents (Dkt. Nos. 239, Exs. D, E, F), emails

23  which Plaintiff conceded at the hearing were not withheld in violation of a Court order.[6]

24

25  ───────────────────
    [6] Plaintiff also argued in vague fashion that there were emails that were improperly withheld until
26  defense counsel produced them in January 2017.  Based on those emails, Plaintiff says she had a
    good faith basis to bring her May 22, 2017 motion to compel to obtain additional evidence being
27  withheld.  That motion to compel was resolved by the July 14 Order, which ultimately resulted in
    the Waiver Production.  Plaintiff did not specifically identify those emails or whether they were
28  withheld until January 2017 in violation of a Court order, so the Court declines to impose
    sanctions on this nebulous basis.

The Court also asked Plaintiff to explain in the joint supplemental brief how, if at all, the late production of the Steed Email caused Plaintiff to incur incremental attorneys' fees.  Plaintiff responded that based on the Steed Email and the various unspecified documents she alleges were improperly withheld the Court should impose sanctions for her attorneys' fees associated with bringing the May 22, 2017 motion to compel in the amount of $18,460.00 and attorneys' fees associated with bringing the motion for sanctions in the amount of $35,327.50, for a total of $53,787.50.  Yet Plaintiff did not seek to apportion the part of this gross amount related to the belated production of the Steed Email, the only email which Plaintiff has demonstrated was withheld in violation of a Court order.  Instead, she asks for her entire attorneys' fees that are related to the motion to compel and the motion for sanctions, rather than specifying which part of that can be attributed to the late production of the Steed Email.  A sanctions award under Rule 37 for violation of a court order must be just, and the award of *all* fees associated with these two motions is not proportional to the harm caused and would not be just under these circumstances.

Plaintiff's argument that the Steed Email (and other unspecified emails that were produced in January 2017) raised her suspicions that BUSD was improperly withholding other emails and led to her filing the May 22, 2017 motion to compel is also not persuasive for two reasons.  First, as of January 2017, Plaintiff already knew that BUSD had been withholding emails because the emails that were produced in January 2017 were only produced as a result of Plaintiff's earlier motion to compel seeking the production of emails.  The May 22, 2017 motion to compel, as it relates to this issue, focused on whether Defendants waived their assertion of attorney-client privilege over certain documents because they had not disclosed that they were being withheld until May 2017, a month after the Court's ruling on Defendants' motion for summary judgment, as well as other documents that Plaintiffs argued were identified on deficient privilege logs.   The motion also sought information about document preservation efforts in light of the deleted email accounts of two individual Defendants and other perceived discovery misconduct.  Second, Plaintiff argued in its motion for sanctions and at the motion hearing that it did not receive the September 20, 2013 Email until August 2017.  Even though she actually received it in January 2017, she apparently was not aware of its existence at the time she filed her motion to compel on

16

May 22, 2017.

She is on firmer ground when she argues that she incurred expenses because of the Steed Email when she filed the motion for sanctions. It is clear that that motion was related, in part, to BUSD's improper withholding of this document, and some portion of the attorneys' fees incurred in the filing of the motion for sanctions is warranted. Thus, the Court finds that payment of a portion of Plaintiff's reasonable expenses is an appropriate sanction for ESM/Donohoe's failure to comply with the Court's September 6 Order. Plaintiff submitted records demonstrating that her attorneys' fees for the motion for sanctions totaled $35,327.50. The Court awards a monetary sanction of $10,000 of the attorneys' fees incurred in connection with the sanctions motion against ESM/Donohoe. This sanction of almost one-third of the total fees incurred for the sanctions motion is appropriate and just in light of ESM/Donohoe's unjustified withholding of the document, the prejudice caused by withholding this document in particular, and the complexity of the briefing required to bring the sanctions motion.

**July 14 Order:** Plaintiff's sole basis for seeking sanctions related to the Court's July 14 Order appears to be that ESM/Donohoe continued to withhold emails from November 2015 between Ms. Donohoe and Greg Hetrick, who helped Ms. Donohoe collect ESI in this case, that should have been produced in response to the July 14 Order. Ms. Donohoe has submitted copies of these emails and represented that they were produced to Plaintiff on August 10, 2017 as part of the Waiver Production. Donohoe Decl., ¶ 66, Ex. GG. Accordingly, Plaintiff has not demonstrated a violation of the July 14 Order for which sanctions are warranted.

### 2. Remaining Grounds for Sanctions

Plaintiff has also requested sanctions against ESM/Donohoe under Rule 26(g), 28 U.S.C. § 1927, and the Court's inherent power to impose sanctions. As the Court has addressed at the hearing that resulted in the September 6 hearing, the hearing on Plaintiff's motion for sanctions, and this order briefly touched on above, the Court finds that Plaintiffs have not established by clear and convincing evidence that ESM/Donohoe "multiplie[d] proceedings in [this] case unreasonably and vexatiously," as required under 28 U.S.C. § 1927, or that it willfully violated a

United States District Court
Northern District of California

1   Court order or acted in bad faith in order to support invoking the Court's inherent authority.[7]  No

2   sanctions will issue on these bases.

3       Finally, Plaintiff invoked Rule 26(g) in her motion for sanctions, but then paid scant

4   attention to how it applied on the facts of this case.  Rule 26(g) requires a party's attorney to

5   certify every discovery request, response, or objection.  Fed. R. Civ. P. 26(g)(1).  One element of

6   the certification is that a disclosure "is complete and correct as of the time it is made."  Fed. R.

7   Civ. P. 26(g)(1)(A).  If a certification violates the rule without substantial justification, the Court

8   must impose an appropriate sanction, including reasonable expenses caused by the violation.

9   Because a violation of the discovery certification rises and falls on Plaintiff's proof that

10  ESM/Donohoe violated the Court's discovery order, the Court declines to order additional

11  sanctions under this rule because they would be duplicative of sanctions under Rule 37.

12  **IV.     CONCLUSION**

13      For the reasons set forth above, the Court GRANTS in part Plaintiff M.B.'s motion for

14  sanctions against ESM/Donohoe.  ESM/Donohoe shall pay $10,000 as sanctions to Plaintiff M.B.

15  in accordance with this order within 30 days.

16

17      **IT IS SO ORDERED.**

18  Dated: March 5, 2018

19

20

21  ELIZABETH D. LAPORTE
    United States Magistrate Judge

22

23

24

25

26

27

28  ─────────────────
    [7] Even if the preponderance standard applies, the Court still finds that Plaintiff has not met her burden.

18

*United States District Court*
*Northern District of California*